UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KELLY M. TITSWORTH, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) Cause No. 3:14-cv-00493-MJR-DGW |
| v. | ) |
| | ) |
| COMMUNITY LINK, INC., | ) Jury Trial Demanded |
| | ) |
|     Defendant. | ) |

## COMPLAINT

### Jurisdiction and Venue

1. The Court has jurisdiction of this matter under 28 U.S.C. §1331 and §1343. Plaintiff's claims arise under the Americans with Disabilities Act, 42 U.S.C. §12101, et seq., and the Family and Medical Leave Act, 29 U.S.C. §2601 et seq.

2. The unlawful employment actions alleged in this matter occurred in Clinton County, Illinois.

### Parties

3. Defendant Community Link, Inc. is an Illinois not-for-profit corporation with its principal place of business in Clinton County, Illinois.

4. Defendant was at all relevant times acting by and through its agents, servants, and employees, all of whom were acting within the scope and course of their employment and with full knowledge, direction, and control of Defendant.

5. Plaintiff Kelly Titsworth is a citizen of the United States and a resident of the State of Illinois.

**Facts Underlying Plaintiff's Claims**

6.   In December 2009 Plaintiff began employment with Defendant as a Parent Educator in its "First Steps" (early Head Start) program.  Her principal responsibility is conducting weekly home visits with each of her client families to assess their needs and provide them with early childhood development services.

7.   In April 2011 Plaintiff was diagnosed with seronegative spondyloarthropathy, a chronic joint disease.  The disease causes Plaintiff to experience, among other things, severe pain in her right hand and wrist, back pain and stiffness, and extreme fatigue.  These symptoms have gotten progressively worse over time.  The disease requires certain medications and treatments that have side effects that also impair her activities.

8.   In May 2011 Plaintiff informed Defendant of her health condition.

9.   Plaintiff's job as Parent Educator requires a significant amount of paperwork, such as making extensive notes concerning each home visit and filling out other forms.  As of May 2011 nearly all of the paperwork had to be done by hand.

10.   Among other things, Plaintiff's medical condition makes it very difficult and painful for her to grip anything, such as a pen or pencil, with her right hand.  Plaintiff is right handed.

11.   Beginning in June or July 2011 Plaintiff requested that Defendant provide her with accommodations, such as the use of a tablet computer and voice recognition software, to assist her in completing the paperwork required by her position without having to write it all by hand.

12.   Defendant did not provide Plaintiff with a tablet computer or any other

workable accommodation to reduce the need for handwriting until December 2012. In the meantime, she was in nearly constant pain and the condition of her hand continued to get worse. Even after receiving a tablet computer, Plaintiff still had to hand write many of her notes because not all of Defendant's forms were on the computer.

13. As of May 2011, Plaintiff's normal work schedule was Monday through Friday, 37.5 hours per week. Within those parameters she had the flexibility to schedule her home visits with her client families at mutually convenient times.

14. Plaintiff's medical condition requires her to attend numerous doctor and physical therapy appointments. She takes prescription medications, which her doctors frequently adjust in an effort to find the regimen that works best for her. She receives pain management treatment including steroid injections, which make her ill for two to three days after receiving them, and nerve ablation and nerve blocks, which preclude her from driving for 24 hours and restrict other activities.

15. In August 2011 Plaintiff requested that Defendant accommodate her condition by allowing her to complete her 37.5 hours per week by working longer hours Monday through Thursday. This would leave Fridays available for her to go to medical appointments, receive and recover from pain management treatments, and deal with the fatigue that is part of her condition.

16. Defendant allowed Plaintiff to work 37.5 hours per week, Monday through Thursday, for approximately one year. While working that schedule, Plaintiff completed the weekly home visits to her client families and otherwise fulfilled the essential functions of her job.

17. In August 2012, Defendant told Plaintiff her schedule caused an "undue hardship" and insisted that she go back to a five day per week schedule. In order to meet her need to have Fridays off, Plaintiff had to complete 37.5 hours worth of work in the 32 hours she worked Monday through Thursday, and use a vacation day, sick day, or other paid time off every Friday.

18. Plaintiff requested "reduced schedule" FMLA leave that would be consistent with the schedule she was working (32 hours per week, Monday - Thursday). Instead, Defendant granted her "intermittent" leave and required her to obtain and submit a written doctor's excuse every single Friday.

19. Plaintiff complained to her supervisors and to Defendant's Human Resources representatives, and filed internal grievances, alleging that Defendant was not accommodating her health condition appropriately or in a timely manner.

20. Defendant responded to Plaintiff's requests for accommodations and for FMLA leave, and her complaints about her treatment, by making her work environment unpleasant. Among other things, her former Director failed to protect the confidentiality of her medical records, assigned another employee to follow Plaintiff to her home visits, and "tailed" her himself. Supervisory employees told Plaintiff that the current Executive Director thought she was a "troublemaker" and "wanted her gone."

21. In June 2013 Defendant reduced Plaintiff from a full-time to a part-time employee, working 24 hours per week. This change not only reduced Plaintiff's pay, but caused her to lose her health insurance, long and short term disability insurance, and other benefits.

22. Defendant has informed Plaintiff she will resume her full-time status

effective May 1, 2014. However, because of the break in coverage, she will never again be eligible for short or long term disability benefits if she becomes unable to work because of her seronegative spondyloarthropathy.

23. Defendant's conduct has caused Plaintiff to lose wages and other economic benefits of employment, including short and long term disability insurance coverage.

24. Defendant's conduct has caused Plaintiff to experience personal injuries, including increased pain in her hand and wrist, fatigue, anxiety, distress, inconvenience, and loss of enjoyment of life.

25. Defendant's conduct has caused Plaintiff to incur attorneys' fees and the costs of this litigation.

26. Defendant's conduct was undertaken with malice or with reckless indifference to Plaintiff's protected rights.

27. Plaintiff has performed or satisfied all conditions precedent to bringing this action. On July 30, 2013 Plaintiff filed a Charge of Discrimination, alleging disability discrimination, against Defendant with the EEOC. On January 28, 2014 the EEOC issued a Notice of Right to Sue to Plaintiff, which Plaintiff received on or after January 29, 2014.

**COUNT I**
**Americans with Disabilities Act - Failure to Accommodate**

28. Plaintiff incorporates by reference the allegations contained in paragraphs 1-27.

29. At all relevant times, Plaintiff was a person with a disability within the meaning of the Americans with Disabilities Act.

30. At all relevant times, Defendant was an employer within the meaning of the Americans with Disabilities Act.

31. Defendant failed to provide Plaintiff with reasonable accommodations in violation of the Americans with Disabilities Act.

## COUNT II
### Americans with Disabilities Act - Retaliation

32. Plaintiff incorporates by reference the allegations contained in paragraphs 1-31.

33. Defendant's conduct in subjecting Plaintiff to an unpleasant work environment and reducing her from a full-time to a part-time employee was motivated, in relevant part, by her requests for reasonable accommodations and/or her complaints about Defendant's failure to provide reasonable accommodations.

34. Defendant retaliated against Plaintiff in violation of the Americans with Disabilities Act.

## COUNT III
### Family and Medical Leave Act - Interference

35. Plaintiff incorporates by reference the allegations contained in paragraphs 1-27.

36. At all relevant times, Plaintiff was an eligible employee within the meaning of the Family and Medical Leave Act.

37. At all relevant times, Defendant was an employer within the meaning of the Family and Medical Leave Act.

38. Defendant interfered with Plaintiff's right to appropriate leave in violation of the Family and Medical Leave Act.

39. Defendant's interference with Plaintiff's FMLA rights was willful.

## COUNT IV

### Family and Medical Leave Act - Retaliation

40. Plaintiff incorporates by reference the allegations contained in paragraphs 1-27 and 35-39.

41. Defendant's conduct in subjecting Plaintiff to an unpleasant work environment and reducing her from a full-time to a part-time employee was motivated, in relevant part, by her requests for FMLA leave and/or her protests about Defendant's failure to grant her appropriate leave.

42. Defendant retaliated against Plaintiff in violation of the Family and Medical Leave Act.

43. Defendant's retaliation against Plaintiff was willful.

WHEREFORE, Plaintiff demands judgment in her favor and all relief to which she is entitled, including actual, compensatory, liquidated and punitive damages, pre- and post-judgement interest, equitable relief, attorneys' fees and the costs of this litigation, and any other relief the Court deems just and proper.

/s/ *Kathryn E. Denner*
Kathryn E. Denner
Mo. Bar. No. 40260
Of Counsel, Chackes Carlson, LLP
906 Olive Street, Suite 200
St. Louis, MO 63101
(314) 872-8420
(314) 872-7017 FAX
Katedenner@denner-law.com

Attorney for Plaintiff